OPINION OF THE COURT
Anthony J. Carpinello, J.
Petitioner Fay’s Incorporated (Fay’s) challenges the proce *945 dure used by the respondent New York State Department of Health (Department) to find that a clerk at a Fay’s store in Williamson, New York, had sold cigarettes to a minor in violation of the Adolescent Tobacco-Use Prevention Act (Public Health Law art 13-F [the Act]). Petitioner claims that the Department’s Geneva District Office has improperly delegated its enforcement obligations to a private organization, the Tobacco Action Coalition of the Finger Lakes (Coalition). Further, petitioner contends that Department representatives in the Geneva Office automatically refer all complaints from the Coalition to administrative hearings and fail to exercise any discretion with regard to the institution of these hearings. The Department denies petitioner’s claims that it has behaved arbitrarily, capriciously or in violation of the Constitution, instead contending that there is nothing wrong with relying upon information furnished by the Coalition in deciding whether to institute administrative proceedings for violation of the Act.
The facts in this case are essentially undisputed. On August 14, 1995, two members of the Coalition, Caryn Sloth and Peter Sarasino, entered Fay’s store No. 538 in Williamson, Wayne County, New York. Sloth was 16 years old at the time. A clerk at the store allegedly sold a pack of cigarettes to Sloth without asking her age or requesting identification. Sloth and Sarasino both signed a document entitled "Compliance Check Form,” which Sarasino submitted to the Department’s Geneva Office. This document was unsworn. On August 22, 1995, the director of the Department’s Geneva District Office notified Fay’s counsel that the Department had determined that there was evidence of a violation of the Public Health Law at the Williamson store and that a hearing had been scheduled at the Geneva District Office. Annexed to this notice was a document entitled "Finding of Violations” which indicated that Fay’s had violated Public Health Law § 1399-cc on August 14, 1995 by the sale of tobacco to a minor of 16 years of age.
The hearing was conducted on October 5, 1995. Sloth testified at the hearing that she had been a member of the Coalition for several years and that on August 14, 1995, she, Sarasino and another minor went into different stores in the area trying to see whether the stores would sell tobacco without first asking for identification. She testified that she had purchased cigarettes at the Fay’s store on the date in question, and the receipt was entered into evidence. Sarasino testified that he had entered the Fay’s store and witnessed the sale. He stated that he later dropped the compliance check form off at the Department’s Geneva District Office. When asked about *946 the operations of the Coalition generally, Sarasino testified that the Coalition has obtained a list of all tobacco vendors in the area and that he himself selects which stores are to be targeted on a given day.
Also testifying at the hearing was Department Inspector Steven Smolen, who signed the notice of violations form served on petitioner in this case. He testified that the Geneva District Office does not perform compliance checks, instead relying upon the Coalition to undertake this task. He testified that it was the District Office’s policy "to accept the information that the coalition has found in its compliance checks — and when there are violations of the law, the Department has chosen to respond to those violations.” Smolen stated that it was not the practice of the District Office to verify the statements contained in the compliance check form — rather, the District Office "responds to that form by means of preparing a legal action.” He testified that he spoke to Sarasino at some point about the Fay’s complaint, but later indicated that he did not undertake any further investigation of the complaint because the Office "accept[ed] the credibility of the teenager and Mr. Sarasino’s observations and expect[ed] them to testify to their findings”. The administrative tribunal representative found that the evidence at the hearing sustained a violation of Public Health Law § 1399-cc and imposed a $100 penalty. Fay’s administrative appeal was rejected, and this article 78 proceeding ensued.
Public Health Law § 1399-cc prohibits the sale of tobacco products, rolling papers or pipes to individuals under the age of 18. Public Health Law § 1399-ee contemplates that the "enforcement officer” is responsible for determining whether charges will be brought against a retail dealer for a violation of the Act. In this case, it is uncontested that the Department was the appropriate enforcement officer, as Wayne County had failed to designate an enforcement officer of its own. Section 1399-ee (3) (a) provides that "[i]f the enforcement officer determines, after a hearing, that a retail dealer has violated this article three times within a two year period, or four or more times cumulatively he or she shall, in addition to imposing any other penalty required or permitted by this section, direct the commissioner of taxation and finance to suspend the dealer’s registration for one year.” Thus, despite the fact that Fay’s was only fined $100 for the alleged violation in this case, they are vigorously litigating this case because subsequent violations potentially carry a much stiffer penalty.
Although Fay’s makes a number of interrelated arguments in support of the instant petition, the substance of Fay’s posi *947 tion in this proceeding is that the Geneva District Office has failed to perform a duty imposed by law and has acted arbitrarily and capriciously by improperly delegating its statutory authority to enforce violations of the Act to a private organization. As noted above, Steven Smolen testified at the hearing that the District Office undertakes no compliance checks of its own, but rather relies upon the Coalition to check compliance with the Act. The Office takes the Coalition’s complaints at face value and does not undertake any investigation of its own upon receipt of a complaint by the Coalition.
In support of its argument in this regard, the petitioner cites Matter of International Serv. Agencies v O’Shea (104 Misc 2d 1071). In this case, Supreme Court determined that the State respondent acted arbitrarily and capriciously in delegating the responsibility for determining which charities would be permitted to participate in the annual State Employees’ Federated Appeal to private charitable organizations and in failing to adopt specific, written standards to determine eligibility for participation in the annual appeal. As part of its criticism of the manner in which the respondent had improperly delegated its authority to determine inclusion in the program, the court noted that "the reins of government cannot be turned over to private interest groups to be utilized to preserve self-interests” (supra, at 1077).
New York courts have also considered, in a slightly different context, whether it is appropriate for enforcement of criminal laws to depend solely upon private complaints. In People v Acme Mkts. (37 NY2d 326, 328), the precise question before the Court of Appeals was whether "prosecution at the instance of an interest group for its private purposes constitutes discrimination violative of the equal protection clauses of the Federal and State Constitutions.” In that case, the statute at issue was the Sunday sales law. A local meatcutters union had targeted local supermarkets and devised a plan for union members and officials to attempt to purchase restricted items, with union funds, on Sundays. Thereafter, informations were filed and prosecutions commenced. The District Attorney testified that there was no policy to actively prosecute violations of the Sunday sales law, but that if an information were filed by a private citizen, a prosecution would be commenced. In finding that the statute had been discriminatorily enforced, the Court of Appeals observed that "it is not an exaggeration to say that enforcement has been totally surrendered to private parties and interest groups who without constraint may manipulate *948 the law for purely private purposes. This is an unseemly state of affairs openly inviting discrimination and harassment of one group by another” (supra, at 331).
People v Acme Mkts. (supra) is different from the instant case because it involved a criminal prosecution, because petitioner has not expressly made a claim of discriminatory enforcement, and because there is no evidence before the Court that the statute in question has fallen into disuse, as was the case with the Sunday sales law. Quite the contrary, the Act, which was only passed in 1992, reveals a clear intent to protect adolescents from the harmful effects of cigarette smoking. The penalty provisions included in the statute impose a real financial hardship upon repeat violators. However, the dicta in the Court of Appeals case with regard to private enforcement has a special resonance in this case. There is unrebutted testimony in the record before this court that the Geneva District Office undertakes no investigations of its own regarding compliance with the Act. Instead, the Office relies solely upon unsworn statements from members of a private organization to sustain a finding of statutory violation. The Coalition itself selects which retail dealers will be targeted on a given day, and although Sarasino testified that all violations allegedly observed by Coalition members are brought to the attention of the District Office, Smolen, an inspector at the District Office, testified that a violation proceeding is commenced upon receipt of a complaint from the Coalition.
In People v Klein Corp. (86 Misc 2d 354), there was evidence before the court that the zoning laws in the City of Yonkers depended entirely upon the institution of citizen complaints. Unlike the Sunday sales law, the zoning law was vigorously enforced and many complaints were filed. However, the court found that the degree of enforcement was not in itself dispositive. "If * * * all of those complaints are privately initiated the only difference between enforcement of the zoning code and the Sunday closing law is that the public is more concerned with the protections afforded them under the zoning law than whatever benefit may accrue to them under the Sunday closing law. The danger of surrender 'to private parties and interest groups who without constraint may manipulate the law for purely private purposes’ * * * is just as real” (supra, at 358, citing People v Acme Mkts., supra, at 331). The court went on to note that certain types of violations are not susceptible to enforcement by governmental initiation. The court gave as an example a landlord’s violation of his or her obligation to *949 provide heat to tenants. "The evidence to support this type of complaint cannot be obtained by governmental authorities except at the instance of private complainants. In the case of zoning violations however, where, as in this case, the alleged violation is open and notorious, it is the obligation of the legally instituted enforcing body to establish some adequate method to ensure that the guarantee of equal protection under the law afforded all citizens under the Federal and State Constitutions * * * is met” (People v Klein Corp., supra, at 358 [citations omitted]). Thus, despite the fact that the court found that the defendant had not met the burden of proving discriminate enforcement, the court nonetheless found that the defendant had not been afforded the equal protection mandated by the Federal and State Constitutions and, accordingly, dismissed the complaint.
In the instant case, as in People v Klein Corp. (supra), there is testimony before the court that enforcement of the Act depends entirely upon citizen complaints. If anything, however, this case is even more egregious because enforcement of the Act by the Geneva District Office apparently depends entirely upon citizen complaints from a single organization. Further, as in People v Klein Corp., the category of violation at issue here is not the sort that would depend solely upon information from private complainants. The District Office could certainly implement a mechanism to investigate violations of the Act or even to verify allegations contained in Coalition complaints; it has simply elected not to do so. Although the Department argues, without citation, that it is perfectly proper for a governmental authority to rely upon private information in the performance of official duties, it is apparent from a review of the record in this case that the Geneva District Office does far more than simply rely upon information. Rather, it has entrusted enforcement of the Act to a single, private interest organization and has developed a policy whereby it refers all complaints from this organization to administrative hearing without further investigation.
The instant case is civil, not criminal, in nature. However, as noted above, the civil penalties for violation of the statute can result in a substantial financial hardship to a retail dealer of tobacco products. Fay’s has not claimed that its equal protection rights were violated or that the Act was discriminatorily enforced, and the court does not consider it necessary to resolve the instant case on either of those grounds. However, the concern raised in both Acme Mkts. (37 NY2d 326, supra) and *950 Klein Corp. (86 Misc 2d 354, supra) about private enforcement of the law certainly has a place in the disposition of this case, since the record testimony in this case reveals that the Geneva District Office has permitted a private organization to assume complete responsibility for the enforcement of the Act in its District. In the final analysis, the court agrees with Fay’s that the procedure currently used by the Geneva District Office to determine whether the Act has been violated is arbitrary and capricious as a matter of law, in that the Geneva District Office has impermissibly delegated its legislative authority to enforce the Act to the Coalition. The court further agrees that the respondent failed to exercise the requisite discretion regarding the institution of the administrative proceeding in this case and that the failure to do so constitutes an error of law.
As an aside, the court would like to note that the Coalition’s goals are certainly praiseworthy. Smoking among minors is a serious health issue, and it is certainly appropriate for local organizations and governmental authorities to adopt aggressive programs to educate minors about the dangers of smoking and to ensure that area businesses do not sell tobacco products to minors. However, those programs must operate within the confines of the law. In this case, the Geneva District Office has simply ceded too much authority to a private organization and in so doing has divested itself of discretion with regard to the investigation and enforcement of statutory violations.
It is apparent that the enforcement program currently in place could easily be adjusted to come into compliance with the law. As pointed out by petitioner, the Act expressly authorizes the enforcement officer to schedule an administrative hearing if a complaint is filed by the parent or guardian to whom tobacco products are sold or distributed (Public Health Law § 1399-fE). Thus, if more parents were involved in the Coalition’s program and parents filled out complaint forms, the District Office could automatically refer those matters to hearings and still fully comply with the statute. Additionally, the District Office could become more involved in oversight of the Coalition program, either by accompanying minors into the stores or by investigating the alleged violations after they are reported. The District Office could also participate in the selection of stores to be targeted, instead of leaving this matter entirely to the discretion of the Coalition members.
In conclusion, therefore, the court concludes that the Department has acted arbitrarily and capriciously in its enforcement *951 of the Act and that the petition should therefore be granted. The administrative proceedings should therefore be annulled, the finding of violation expunged, and the $100 fine remitted to petitioner.